IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MATT J. TRACHSEL,

      Plaintiff,

  v.

LITTON LOAN SERVICING, LP, a Texas
limited partnership,

      Defendant.

Civ. No. 09-1053-AC

OPINION AND
ORDER

ACOSTA, Magistrate Judge:

*Introduction*

  Plaintiff Matt J. Trachsel ("Trachsel") has alleged claims against Litton Loan Servicing, LP ("Litton Loan") for unfair trade practices and for fraud, arising in the context of mortgage default, modification, and foreclosure. Trachsel alleges that after he defaulted on his mortgage Litton Loan

offered him an opportunity to modify his loan agreement and avoid foreclosure. Trachsel claims that Litton Loan made misrepresentations regarding the requirements of the modification and the pendency of the foreclosure, which misrepresentations Trachsel relied on to his detriment. Trachsel further alleges that these misrepresentations resulted in Trachsel's property being transferred to affiliates of Litton Loan. Litton Loan argues that Trachsel cannot state a claim under UTPA; that its verbal representations to Trachsel are unenforceable; and that Trachsel's reliance on its representations was not reasonable. For the reasons that follow, the court concludes that there are genuine issues of material fact as to both Trachsel's UTPA and fraud claims, and Litton Loan's motion for summary judgment is denied.

*Factual Background*

On September 23, 2005, Trachsel borrowed $112,000 from Fieldstone Mortgage Company ("Fieldstone") to purchase a share in the residential property at 1479 Fifer Road, Seaside, Oregon ("the property"). (Defendant's Concise Statement of Material Fact ("Def.'s CSMF") ¶ 2.) The loan was evidenced by a promissory note and secured by a deed of trust ("the deed") to the property, which deed was granted to Mortgage Electronic Registration Systems ("MERS") as nominee for Fieldstone. (Def.'s CSMF ¶ 2.) Stewart Title of Oregon originally acted as trustee. (Ledet Declaration ("Decl."), Exhibit ("Ex.") 2 at 1.) Litton Loan, "a loan servicing company for HSBC[,]" was the servicer of Trachsel's residential mortgage. (Plaintiff's Response ("Pl.'s Resp.") CSMF ¶ 8.) On July 23, 2007, MERS assigned the deed to HSBC "as Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2005-3." (Pl.'s Resp. CSMF ¶ 8; Ledet Decl., Ex. 3.)

In May 2008, Trachsel defaulted on his loan and, as of June 2008, the loan was officially in default. (Def.'s CSMF ¶ 4.) On December 24, 2008, Trachsel received a "Notice of Default and

Election to Sell" which set forth a foreclosure date of May 8, 2009. (Pl.'s Resp. CSMF ¶ 9.) The foreclosure date was confirmed by a Trustee's Notice of Sale, also sent to Trachsel, dated January 2, 2009. (Pl.'s Resp. CSMF ¶ 9.) Litton Loan, via its agent Titanium Solutions, sent Trachsel a loan modification proposal to assist Trachsel in avoiding foreclosure. (Def.'s CSMF ¶ 6.) The modification agreement was subject to conditions and required specific submissions by Trachsel. (CSMF ¶ 6.) In particular, the loan modification documents stated that as a program requirement that Trachsel "[s]ign the enclosed Loan Modification Agreement, have it notarized, and return it to Litton Loan at the address provided below." (Ledet Decl., Ex. 6 at 4.) The agreement itself provided for Trachsel's signature, as well as for that of a notary public. (Ledet Decl., Ex. 6 at 6.) Trachsel was told, however, that notarization was not necessary. (Trachsel Decl. ¶ 5.)

Trachsel returned the loan modification documents. In February 2009, he had not heard back from Litton Loan regarding his loan modification application and he began calling Litton Loan to inquire as to its status. (Trachsel Decl. ¶ 6.) He was repeatedly told that Litton Loan was postponing its decision pending release of President Obama's mortgage foreclosure plan. (Trachsel Decl. ¶ 7.) Trachsel was never informed that his documentation was deficient in any way. *Id.* The original foreclosure date, May 8, 2009, came and went, and Trachsel was informed that the date was "open" or "blank," and was told he would be notified in advance of any pending foreclosure. (Trachsel Decl. ¶¶ 7,8.) On June 29, 2009, Trachsel received a letter requesting documentation for the loan modification, all of which he had already submitted. The letter did not mention a notarization requirement. (Trachsel Decl. Ex. D.) Trachsel called the contact number stated on the letter to inform them he had already submitted the documents in question; he was not informed at that time that his documentation was otherwise deficient. (Trachsel Decl. ¶ 9.)

OPINION AND ORDER                             3                             {KPR}

After defaulting on his loan, but prior to foreclosure, Trachsel approached his friend Terry Lowenberg ("Lowenberg") to ask about the possibility of Lowenberg making a private loan to Trachsel for the purpose of curing his loan default and avoiding foreclosure. (Def.'s CSMF ¶ 11.) In Lowenberg's words: "I told Mr. Trachsel that if it came to foreclosure, I was willing to personally loan him the funds to pay off his lender and to prevent his property from being foreclosed." (Lowenberg Decl. ¶ 3.)

According to Trachsel, he called Litton Loan two times per month between February and August 2009 to inquire about the status of his loan modification, though he never attempted to communicate with Litton Loan in writing. (Trachsel Deposition 21:21-25; 23:11-19.) In a letter dated July 28, 2009, Litton Loan informed Trachsel that the modification had been denied. (Pl.'s Resp. CSMF ¶ 13.) The letter stated: "you have failed to properly endorse or notarize the original Loan Modification Agreement and/or return the required funds, and the time frame to complete the modification has expired. If foreclosure action has begun, it will continue until you make arrangements with us. Please call us today." (Thomas Affidavit ("Aff."), Ex. 1 at 6.) After receiving this letter, Trachsel called Litton Loan repeatedly, but was unable to reach a representative and, despite leaving a number of messages, his calls were not returned. (Trachsel Decl. ¶ 10.) Trachsel was never notified of the new foreclosure date. (Trachsel Decl. ¶ 11.) On August 7, 2009, the property was sold at foreclosure sale. (Pl.'s Resp. CSMF ¶ 15.) Trachsel's property was purchased by Quality Loan Service Corp. of Washington ("Quality Loan"). (Def.'s Request for Judicial Notice, Ex. 5 at 1.) Trachsel believes that both Quality Loan and Fieldstone are affiliated with Litton Loan and participated in the fraud. (Compl. ¶14.)

*Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Discussion*

I. Unfair Trade Practices Act

Litton Loan seeks summary judgment on Trachsel's Unfair Trade Practices Act ("UTPA") claim on the ground that UTPA does not apply to the alleged conduct, and that if UTPA applies, the loan modification was not enforceable under the statute of frauds and for lack of consideration.

*A. Applicability of UTPA*

Litton Loan argues that the UTPA claim must be dismissed because loans do not qualify as goods or services, the sale of which are protected by this statute. Trachsel responds that although the provision of loans themselves is not subject to UTPA, the provision of loan services is. The court must thus determine whether the misrepresentations allegedly made in the course of Trachsel's loan modification application process are properly construed as of the loan itself, or in the service of the loan.

The Oregon Court of Appeals addressed this question in some depth in *Cullen v. Investment Strategies, Inc.*, 139 Or. App. 119, 911 P.2d 936 (1996). There, the defendant was a mortgage broker who, in the course of securing a personal residential loan for the plaintiffs, failed to disclose that the loan carried a "higher than market interest rate" in order for the defendant to recover a larger fee from the actual lender. The complaint characterized the misrepresentation as a "non-disclosure regarding the nature of the loan transaction[.]" *Id.* at 122. The Court of Appeals turned to three of its prior decisions for guidance as to whether this misrepresentation was actionable under Oregon's version of UTPA.

First, the court considered *Haeger v. Johnson*, 25 Or. App. 131, 548, P.2d 532 (1976), wherein it held that lending money did not amount to a sale of goods or services and so was not subject to UTPA. The *Cullen* court then turned its attention to *Lamm v. Amfac Mortgage Corp.*, 44 Or. App. 203, 605 P.2d 730 (1980), which extended *Haeger*'s reasoning to ORS 646.608(1)(s), which refers to "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." OR. REV. STAT. 646.608(1)(s) (2009). Finally, the court revisited its decision in *Roach v. Mead*, 76 Or. App. 83, 709 P.2d 246 (1985). There, the UTPA claim was asserted by the lender, who alleged that the defendant had "advised him to accept legally unenforceable promissory notes in consideration for the loan." *Cullen*, 139 Or. at 125. The Court of Appeals ruled that "[a] person who simply loans money, with no other factors involved, cannot be within the protections of the UTPA." *Roach*, 76 Or. App. at 88.

The *Cullen* court concluded, in light of these decisions, that the professional services of a non-lender in connection with a loan fall within UTPA: "Consequently, a non-lender's material nondisclosures or misrepresentations regarding the character, quality, or cost of such services are actionable under the UTPA. Thus, for example, a residential loan broker who misrepresents the costs of its brokerage services is subject to UTPA liability." 139 Or. App. at 127. The court went on to conclude that misrepresentations as to the terms of the loan itself are not actionable under UTPA. *Id.* at 128. By this reasoning, the court concluded that misrepresentations by the mortgage broker regarding the interest rate and total cost of the loan were *not* actionable under UTPA. It concluded, however, that the mortgage broker's failure to disclose the premium yield, the option to finance at a lower rate, and the fees the broker would receive at the higher rate *were* actionable under UTPA as "material nondisclosure[s] of information pertaining to the provision of brokerage services,

OPINION AND ORDER 7 {KPR}

as distinct from particular loan terms." *Id.* at 129. This decision was recognized in this district in *Torrance v. Aames Funding, Corp.*, 242 F. Supp. 2d 862, 865 (D. Or. 2002): "Oregon law allows claims under [] UTPA for loan services." (citing *Cullen*).

In a recent case involving multidistrict litigation, the court rejected an Oregon UTPA claim against Litton Loan, among other defendants, arising from the alleged misrepresentation that the plaintiff qualified for a loan modification. The court wrote, quoting *Cullen*: "However, 'A loan is not a "good" or "service" for UTPA purposes,' and 'material nondisclosures or misrepresentations of loan attributes are not actionable under the UTPA.'" *In re Mortgage Electronic Registration Systems (MERS) Litigation*, MDL Docket No. 09-2119-JAT, 2011 WL 4550189, at *10 (D. Ariz. Oct. 3, 2011). The court then noted that the plaintiffs had "attempt[ed], but fail[ed], to draw a distinction that would save them from this exclusionary rule[,]" and thus summarily dismissed the claim. However, this litigation concerned solely claims pertaining to the formation and operation of MERS and not claims pertaining to loan collection or the requirements for obtaining a modification. Accordingly, this decision does not undermine the ruling of Oregon courts that UTPA, as set forth under Oregon law, may give rise to a claim for misrepresentations made in servicing a loan, though not a claim arising from the terms of the loan itself.

Here, the court must determine whether Trachsel's allegations implicate the provision of loan services or the terms of the loan itself. Trachsel alleges, in relevant part, that Litton Loan represented that the foreclosure was indefinitely on hold pending review of the loan modification; that a decision as to modification was itself on hold pending action by President Obama on foreclosure assistance; that Trachsel did not need to notarize his modification application; and that his modification application was complete. Trachsel further alleges that he was unable to

communicate with Litton Loan after learning that his modification application had been denied and that active foreclosure of his house had resumed.

The misrepresentations cited by Trachsel do not implicate the terms of the loan, nor do they question the terms of the modification of the loan. Trachsel does not argue that the modification should have been approved, nor does he seek to enforce the modification. Rather, all of Trachsel's allegations with respect to his UTPA claim arise from Litton Loan's conduct in conducting the modification and foreclosure processes, in particular those misrepresentations that ultimately resulted in foreclosure of Trachsel's property.

Additionally, Litton Loan is a loan servicer and not a lender. It holds itself out as a servicer, its full name being "Litton Loan Servicing, LP." Notably, at the bottom of the July 28, 2009, letter, it states: "Litton Loan Servicing LP is a debt collector. This is an attempt to collect your debt and any information obtained will be used for that purpose." (Ledet Aff. Ex. 7.) Litton Loan does not represent itself as a lender, nor does it purport to act in a lending capacity.

For these reasons, Trachsel's allegations cannot be characterized as pertaining to the lending of money, or the terms of a loan or its modification. Rather, the allegations are more accurately characterized as allegations arising from a loan servicing relationship and are thus actionable under UTPA.

    B.    *Enforceability*

Litton Loan argues that even if Trachsel can state a claim under UTPA such claim must fail because the alleged modifications were neither in writing nor supported by consideration, and are thus unenforceable. Trachsel responds that this claim does not arise in contract, he does not seek to enforce an oral contract, and therefore these contractual deficiencies are irrelevant.

OPINION AND ORDER            9            {KPR}

The court agrees that Trachsel's claim does not sound in contract. Trachsel does not seek to enforce a contract or other oral agreement; indeed, Trachsel does not argue that his loan agreement was ever modified. The gravamen of Trachsel's claim is that Litton's unfair conduct in handling the process for securing a modification prevented him from obtaining the modification and, ultimately, caused him to lose his house. As such, the enforceability of the loan modification is not at issue.

C.   *Reasonableness*

Litton Loan argues that because foreclosure was a remedy authorized by the mortgage agreement, foreclosure on Trachsel's property was per se reasonable, and that Trachsel's reliance on its misrepresentations was otherwise unreasonable because the July 28, 2009, letter informed him that foreclosure was again underway. Trachsel responds that his reliance was reasonable because he had not received notice of the second scheduled foreclosure as required by statute, and Litton Loan made repeated oral representations that he would be informed prior to the reinitiation of foreclosure.

UTPA prohibits a person, in the course of their "business, vocation or occupation" from "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce." OR. REV. STAT. 646.608(1)(u). Here, Trachsel claims that he was assured by Litton Loan that he did not need to notarize his loan modification application; he was told that foreclosure of his property was on hold indefinitely and that he would be notified when it was again underway; he was not notified of the second foreclosure sale date; and that Litton Loan failed to respond to his inquiries and proceeded to foreclose without providing notice or the opportunity to cure.

The court does not find the July 28, 2009, letter dispositive of this claim. First, the letter continues the pattern Trachsel had experienced so far, that Litton's written representations were

OPINION AND ORDER                              10                                            {KPR}

inconsistent with the oral representations Litton gave him – and which had proved more accurate. For example, Litton notified Trachsel in writing that foreclosure on his home would occur on May 8, 2009, but foreclosure did not occur on that date, just as he alleges Litton told him orally it would not be foreclosed. Thus, the letter affects no change in the parties dealings upon which Litton can rely for summary judgment.

Second, the letter contains no clear statement that foreclosure would occur or that it would occur on a specific date. In fact, the letter is equivocal on both points. On summary judgment, the letter provides no basis for a ruling as a matter of law on the question of the respective parties' reasonableness or unreasonableness. Third, Trachsel did exactly that which the letter informed him to do, contact Litton Loan. It warns: "If foreclosure action has begun it will continue until you make arrangements with us. Please call us today." (Ledet Decl. Ex. 7.) The letter encouraged Trachsel to pursue other loss mitigation options and gave a phone number at which to reach Litton Loan. Trachsel claims that he contacted Litton Loan repeatedly, but was unable to make contact with a representative and his calls went unreturned. Less than two weeks later, his home was sold at a foreclosure sale for which he did not receive notice, or as represented to him by Litton Loan.

In light of Litton Loan's prior representations to Trachsel, the conditional language used in the letter, and Litton Loan's unresponsiveness immediately prior to foreclosure of Trachsel's property, the court concludes that there is an issue of fact as to whether Trachsel reasonably relied on Litton Loan's misrepresentations. Accordingly, on the record before it, the court concludes that there are genuine issues of material fact as to whether Litton Loan engaged in unfair or deceptive conduct in its dealings with Trachsel prior to the foreclosure of his residential property.

D.   *Actual Notice*

In its reply brief, Litton Loan argues that Trachsel received notice of the postponed foreclosure date by public proclamation, which is sufficient under Oregon law. ORS 86.755(2) states:

> The trustee or the attorney for the trustee, or an agent that the trustee or the attorney conducting the sale designates, may postpone the sale for one or more periods totaling not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale.

OR. REV. STAT. 86.755(2) (2009). Thus, Litton Loan argues, the foreclosure was properly noticed and Trachsel unreasonably relied on representations to the contrary. Litton Loan also argues in its reply brief that it was not the party responsible for providing notice and, thus, it cannot be held responsible for harms arising from Trachsel's reliance on the absence of notice of foreclosure and that, in order to premise a claim on improper statutory notice, Trachsel must join LSI Title Company of Oregon, LLC ("LSI"), as a necessary party.

The court is not persuaded by Litton Loan's arguments. Trachsel does not dispute that he was properly notified of the original foreclosure sale. Furthermore, he does not argue that Litton Loan was responsible for providing statutory notice of the second foreclosure sale. In fact, Trachsel's allegations are based on Litton Loan's own alleged misrepresentations regarding the pendency of the foreclosure sale and not on Litton Loan's failure to provide statutory notice. As such, evidence and argument regarding statutory notice of foreclosure does not form the basis for the underlying claims. For these reasons, the court rejects Litton Loan's argument that statutory notice of foreclosure absolves it of potential liability and that LSI must be joined in this action.

II.     Fraud

A claim of fraud must set forth the following elements:

> '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; (9) and [the hearer's] consequent and proximate injury.'

*Merten v. Portland General Electric Co.*, 234 Or. App. 407, 416, 228 P.3d 623 (2010) (citing *Wieber v. FedEx Ground Package System, Inc.*, 231 Or. App. 469, 480, 220 P.3d 68 (2009)) (brackets in original). The Oregon Supreme Court has, alternatively, expressed the "essential elements" of a fraud claim as: "the defendant made a made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Oregon*, No. SC S057629, 2011 WL 1886283, at *8 (Or. May 19, 2011). To adequately allege such a claim in federal court, the plaintiff must comply with the requirements of Federal Rule of Civil Procedure 9(b), which provides that allegations of fraud be stated "with particularity[.]" FED. R. CIV. P. 9(b). To state with particularity, the plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schrieber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.4 (2007) (noting that a heightened pleading standard is required for "certain subjects understood to raise a high risk of abusive litigation," citing Rule 9(b)).

Litton Loan argues that Trachsel's fraud claim must fail as a matter of law because Trachsel knew the foreclosure sale was going forward and reliance on the verbal statements was thus

unreasonable. Litton Loan specifically argues that Trachsel's reliance on its verbal representations was not reasonable because the July 28, 2009, letter informed him that foreclosure had been reinitiated, he was thus on notice, and reliance to the contrary was unreasonable. Furthermore, Litton Loan argues, the calls Trachsel made to Litton Loan demonstrate that he had knowledge of the foreclosure. Trachsel responds that, having not received the type of notice Oregon law requires prior to a foreclosure sale, it was reasonable for him to rely on Litton Loan's representations that the foreclosure sale was on hold, pending further notice. Trachsel also argues that his failure to secure alternative financing is evidence that he relied on Litton Loan's representations that foreclosure was not imminent. In particular, Trachsel points to the testimony of Lowenberg that he would have lent Trachsel the money needed to avoid foreclosure, if necessary.

As to whether Trachsel could have cured his default prior to foreclosure, the testimony of Trachsel and Lowenberg create at least a genuine issue of material fact. Finally, Litton Loan's arguments as to contract enforceability are again inapplicable to Trachsel's fraud claim, as it does not sound in contract.

For these reasons, the court concludes that there are genuine issues of material fact as to whether Trachsel reasonably relied on Litton Loan's fraudulent representations, which reliance resulted in the foreclosure of his home. Litton Loan's motion for summary judgment on this claim is denied.

*Conclusion*

For the reasons stated, the court concludes that there are genuine issues of material fact on Trachsel's UTPA and fraud claims, and Litton Loan's motion for summary judgment (#65) is DENIED.

IT IS SO ORDERED

DATED this 8th day of November, 2011.

_____
JOHN V. ACOSTA
United States Magistrate Judge